UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

DONNA W. SHERWOOD, et al., )
)
Plaintiffs, )
)
v. )                    No.:   3:12-CV-156-TAV-HBG
)
TENNESSEE VALLEY AUTHORITY, )
)
Defendant. )

## MEMORANDUM OPINION

This civil action is before the Court on the following motions: (1) defendant's
Motion for Judgment in Plaintiffs' Favor [Doc. 378]; (2) plaintiffs' Motion for Sanctions
and an Evidentiary Hearing [Doc. 397]; (3) plaintiffs' Motion for Discovery [Doc. 399];
(4) plaintiffs' Motion for Leave to File Fourth Amended Complaint and to Join Additional
Plaintiff [Doc. 401]; (5) defendant's Motion for Entry of Order or Hearing [Doc. 405]; (6)
plaintiffs' Motion for Approval to File FOIA Response re Woodward Instructions or Lack
of Instructions [Doc. 408]; and (7) plaintiffs' Motion for Approval to File FOIA Response
re TVA's Instructions to Suspend the 15-Foot Rule and/or Revert to Previous Practices
[Doc. 424].  The parties filed several responses and replies in connection with the pending
motions [Docs. 392, 394, 400, 404-1, 407, 410, 413-1, 414–17].  The Court held a hearing
to address these motions on June 26, 2017 [Doc. 421].

For the reasons discussed herein, the Court will: (1) grant in part and deny in part
defendant's Motion for Judgment in Plaintiffs' Favor [Doc. 378]; (2) deny plaintiffs'
Motion for Sanctions and an Evidentiary Hearing [Doc. 397]; (3) deny plaintiffs' Motion

for Discovery [Doc. 399]; (4) deny plaintiffs' Motion for Leave to File Fourth Amended Complaint and to Join Additional Plaintiff [Doc. 401]; (5) grant in part and deny in part defendant's Motion for Entry of Order or Hearing [Doc. 405]; (6) deny plaintiffs' Motion for Approval to File FOIA Response re Woodward Instructions or Lack of Instructions [Doc. 408]; and (7) deny plaintiffs' Motion for Approval to File FOIA Response re TVA's Instructions to Suspend the 15-Foot Rule and/or Revert to Previous Practices [Doc. 424].

## I.    Background

This litigation started in 2012, when plaintiffs sued defendant for violating the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370m-12. Plaintiffs alleged that defendant violated NEPA by not preparing and publishing an environmental impact statement ("EIS") prior to implementing a new policy, referred to in this litigation as the "the 15-foot rule." *See Sherwood v. Tenn. Valley Auth.*, 842 F.3d 400, 402 (6th Cir. 2016). After several rounds of litigation in this Court and in the Court of Appeals for the Sixth Circuit, this matter is back before the Court on remand from the Sixth Circuit [Doc. 356]. The Court presumes familiarity with this action based on the Court's previous opinions and orders as well as the Sixth Circuit's opinions. The Court will, however, provide some background as to the most recent appeal and the issues currently pending before the Court.

When this matter was on remand before this Court after the first appeal, defendant moved to dismiss the case as moot [Doc. 232], asserting that it had suspended use of the fifteen-foot rule and reverted to the right-of-way maintenance practices that were utilized

prior to the introduction of the fifteen-foot rule [Doc. 276 p. 2]. Defendant provided the Court with declarations from Jacinda B. Woodward, Senior Vice President of Transmission and Power Supply of TVA, attesting to the suspension of the rule [Docs. 233-1, 240-1]. The Court granted defendant's motion and dismissed the case as moot [Docs. 276, 277], and plaintiffs appealed that decision to the Sixth Circuit [Doc. 286].

On this second appeal, the Sixth Circuit provided that even if defendant had formally abandoned the 15-foot rule, "evidence in the record suggests that [defendant] has not reverted back to the right-of-way practices it used before adopting the rule" [Doc. 356 p. 8]. The Sixth Circuit determined that some evidence in the record suggested that the 15-foot rule has some continuing effect and, therefore, that the case was not moot [*Id.* at 8–9]. In making this finding, the Sixth Circuit relied on declarations by Billy Anderson, Shiras Walker, and Anthony King, which plaintiffs submitted [*See id.* at 6–11]. Furthermore, the Sixth Circuit found that defendant's "promise to perform NEPA review before changing its buffer-zone maintenance policies is not an adequate assurance that its challenged conduct will not recur" [*Id.* at 10]. The Sixth Circuit further determined that "the record shows more than a 'mere possibility' that defendant's challenged conduct will recur (or is continuing)" [*Id.*]. The Sixth Circuit then remanded the case, providing that this Court should require defendant to compile an administrative record of its decision to implement the 15-foot rule [*Id.* at 11].

Defendant filed its administrative record on February 13, 2017 [Docs. 360–76]. On March 10, 2017, defendant filed a Confession of Judgment in Plaintiffs' Favor [Doc. 377]

and a Motion for Judgment in Plaintiffs' Favor [Doc. 378].  In defendant's confession of judgment, defendant consents to entry of a judgment declaring that its implementation of the 15-foot rule violated NEPA [Doc. 377 p. 1].  Defendant also informs the Court that it has published notice in the Federal Register that it is preparing a programmatic, system-wide EIS of its transmission line right-of-way vegetation maintenance practices.  One of the alternatives defendant will study in that EIS encompasses the level of tree clearing specified by the challenged 15-foot rule.  Defendant also confesses judgment in plaintiffs' favor and consents to entry of judgment as requested in plaintiffs' controlling complaint.  Defendant attached a proposed judgment to its motion for the Court's review [Doc. 379-1].

In response, plaintiffs argue that the initial proposed injunction, although it mirrors the relief requested in the complaint, does go far enough in light of the defendant's actions throughout the pendency of this litigation.  Specifically, plaintiffs point out that defendant previously informed the Court that it had suspended the 15-foot rule and reverted to its past vegetation management practices, when it had not in fact done so.  Since defendant's initial filings asking the Court to issue judgment in plaintiffs' favor, the parties have presented several versions of proposed injunctions for the Court's review.  While the parties have narrowed the issues the Court must determine regarding the terms of the injunction, the parties have not agreed on several terms of the injunction.

Plaintiffs have also filed a motion to amend their complaint to add an additional plaintiff [Doc. 401], a motion for sanctions [Doc. 397], a motion for discovery [Doc. 399],

and two motions for leave to file FOIA responses [Docs. 408, 424]. Defendant also filed

a motion for entry of order or hearing [Doc. 405], which essentially narrows the issues

regarding the terms of the injunction. The Court will first address plaintiffs' motion to

amend. The Court will then turn consider the parties' arguments regarding the terms of the

injunction. Finally, the Court will address plaintiffs' motion for sanction, motion for

discovery, and motion to file the FOIA response.

## II.     Plaintiffs' Motion to Amend

Plaintiffs move to amend their complaint to add Billy J. Anderson as a plaintiff and

to seek equitable relief for him.[1]    Plaintiffs assert that defendant's destruction of

Anderson's orchard played a central role in the second appeal in that the Sixth Circuit

recognized that defendant destroyed Anderson's orchard six months after it advised this

Court that it had suspended the 15-foot rule and reverted to its prior practices. Plaintiffs

seek relief for Anderson in the form of a Court order requiring defendant to "re-plant Mr.

Anderson's orchard with trees mature enough to bear fruit and nuts" [Doc. 402 p. 3; *see

also* Doc. 401-1 ¶ 157].

Aside from the situations described in Federal Rule of Civil Procedure 15(a)(1),

which do not apply here, "a party may amend its pleading only with the opposing party's

written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely

give leave," however, "when justice so requires." *Id.*   Leave is appropriate "[i]n the

---

[1]   The Court notes that plaintiffs initially moved to add additional amendments. In their
reply brief, however, plaintiffs rescinded those requests and stated that the Court should only
consider whether to add Anderson's claims [Doc. 413-1 p. 7].

absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 807 (6th Cir. 2005). Pursuant to Federal Rule of Civil Procedure 20(a)(1):

> Persons may join in one action as plaintiffs if:
>
> > (A)    they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> >
> > (B)    any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1).

Defendant argues that the proposed amendment to add Anderson as a plaintiff and seek relief on his behalf is futile because, according to defendant, the equitable relief plaintiffs seek to add for Anderson is not available under NEPA. In considering whether the Court may order defendant to re-plant Anderson's orchard, the Court is cognizant that "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (citation omitted). NEPA violations are "subject to traditional standards in equity for injunctive relief," and

6

in crafting an injunction, "court[s] must balance the equities between the parties." *N. Cheyenne Tribe v. Norton*, 503 F.3d. 836, 842 (9th Cir. 2007). Courts must also "give due regard to the public interest," which includes "giving due regard to the protection of the environment and the welfare of the affected" parties. *Id.* at 842–43. In addition, courts "should take care not to craft a remedy that extends beyond what NEPA itself and its implementing regulations require." *Nat'l Audubon Soc'y v. Dep't of Navy*, 422 F.3d 174, 202 (4th Cir. 2005).

NEPA "seeks to guarantee process, not specific outcomes." *Massachusetts v. U.S. Nuclear Regulatory Comm'n*, 708 F.3d 63, 67 (1st Cir. 2013). NEPA does not "require[] that action be taken to mitigate the adverse effects of major federal actions." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 353 (1989). In addition, it "makes no provision for awarding damages and restitution to a private party." *Pye v. Dep't of Transp. of Ga.*, 513 F.2d 290, 293 (5th Cir. 1975). Furthermore, courts often find that no remedy is available under NEPA if a project is substantially or entirely complete. *See, e.g., Mont. Wilderness Ass'n v. Fry*, 408 F. Supp. 2d 1032, 1037 (D. Mont. 2006) (noting that "a NEPA violation will usually result in a simple remand of the issue to the agency before any action has taken place," but that in some cases there is "no remedy," such as "when a NEPA-violating timber harvest has already been completed"); *see also Pub. Interest Research Grp. of Mich. (Pingam) v. Brinegar*, 517 F.2d 917, 918 (6th Cir. 1975) (per curiam) (finding that the district court did not abuse its discretion in denying motion for preliminary injunction where project was substantially complete).

Plaintiffs contend that the question of whether the Court should provide Anderson with the proposed relief is not properly before the Court at this juncture [Doc. 413-1 p. 3]. Rather, plaintiffs argue that the only question here is whether the Court should permit Anderson to join the case and make his allegations. The Court notes, however, that private litigants fail to state a claim under NEPA when requesting relief that is inappropriate under the statute. *See United States v. 45,149.58 Acres of Land*, 455 F. Supp. 192, 203 (E.D.N.C. 1978) (holding that litigant failed to state a claim under NEPA because "private litigants can recover no money damages for an agency's failure to file an EIS, even if required").

Although plaintiffs are not seeking money damages for Anderson, the Court finds that the relief plaintiffs seek for Anderson "extends beyond what NEPA itself and its implementing regulations require." *See Nat'l Audubon Soc'y*, 422 F.3d at 202. The proposed individual relief for Anderson, although framed as injunctive relief, is akin "to mitigat[ing] the adverse effects of [a] major federal action[]," and NEPA does not require such mitigation. *See Robertson*, 490 U.S. at 353. As such, Anderson's proposed claims would not survive a motion to dismiss because the requested additional relief is not available under NEPA. *See 45,149.58 Acres of Land*, 455 F. Supp. at 203.

In addition, defendant argues that allowing the amendment would be unduly prejudicial because adding Anderson as a plaintiff would effectively add a separate legal claim at a late stage in this litigation [Doc. 407 p. 5]. Furthermore, defendant provides that "Anderson is free to bring his own lawsuit against [defendant]" [*Id.* at 6]. In response, plaintiffs contend that "another Court should [not] be forced to come to grips with the facts

that this Court and the Court of Appeals are already familiar with" [Doc. 413-1 p. 5]. The Court notes, however, that should Anderson file a separate suit in the Eastern District of Tennessee, that suit would be deemed related to the instant action and the Court would be assigned to the case. As such, another court needing to familiarize itself with the facts at issue is not a valid concern.

Plaintiffs also assert that they are not asking the Court to further delay the resolution of the "current litigation" [*Id.* at 5]. Rather, they argue that "the rest of the current litigation should *not* await the resolution of Mr. Anderson's individual claims" [*Id.*]. Based on these arguments, it appears that plaintiffs recognize that Anderson's proposed claims are somewhat distinct from those already before the Court. Consequently, the Court finds that it would be more appropriate for Anderson to bring his claims in a separate suit. This action has been pending before the Court since 2012, and adding Anderson as a plaintiff in this matter would only prolong this litigation and would cause undue prejudice to defendant. Furthermore, both parties agree that the claims before the Court can be resolved upon the Court's determination of the current pending motions. Thus, adding Anderson as a plaintiff would preclude the Court from resolving the action at this juncture. In addition, the Court finds that Anderson would not be prejudiced by the Court's holding as Anderson may pursue his claims in a separate action. Consequently, the Court will deny plaintiffs' motion to amend [Doc. 401].

## III. Injunctive Relief

Defendant moves the Court to enter judgment in this case in plaintiffs' favor pursuant to Federal Rule of Civil Procedure 58 [Doc. 378] based on its confession of judgment [Doc. 377]. The Court will grant defendant's Motion for Judgment in Plaintiffs' Favor [Doc. 378]. The Court will also grant defendant's Motion for Entry of Order or Hearing [Doc. 405] to the extent that the Court will enter judgment in plaintiffs' favor and issue an injunction order.

Consequently, pursuant to defendant's confession of judgment, the Court finds that defendant's implementation of the 15-foot rule violated NEPA, as well as its implementing regulations, because it was a major federal action significantly affecting the quality of the human environment and was not properly studied under NEPA prior to its implementation. As to the appropriate injunctive relief, the Court notes that the parties have provided several versions of proposed injunctions and, ultimately, defendant largely agrees to the terms of the injunction in plaintiffs' second proposed order [Doc. 404-2] with a few objections. Therefore, the Court will include in the injunction the terms the parties agree on.

The remaining issues before the Court regarding the terms of the injunction are: (1) what standard to include for defendant's vegetation management practices; (2) whether to include a spending-reporting requirement; and (3) when the injunction should dissolve. The Court will address each of these issues in turn.

## A.     Standard for Defendant's Vegetation Management Practices

The parties have proposed several potential standards to restrict defendant's vegetation management practices during the injunctive period.  In plaintiffs' second proposed injunction order, plaintiffs requested the following language:

> TVA will leave the existing trees in the wire zone so long as they do not pose an *immediate hazard* to the transmission lines.

> TVA may remove or trim any tress in the wire zone of the right-of-way, in accordance with its contract rights, that it deems to present an *immediate hazard* to its transmission lines.

> . . . .

> IT IS FURTHER ORDERED that where TVA has previously allowed a given landowner to trim his or her own trees, TVA shall continue to do so except  that TVA will have the right to immediately remove or trim any tree that it seems to present an *immediate hazard* to its transmission lines [Doc. 404-2 p. 3 (emphasis added)].

In response to this proposal, defendant contends that the standard "immediate hazard" does not comply with Federal Rule of Civil Procedure 65(d), as defendant argues that the standard is not sufficiently detailed.  Consequently, defendant suggests either:

> (1)     replacing "immediate hazard" with "any tree that, at the time of removal, is within 20 feet of any conductor with the distance being determined at maximum design sag or that could when falling strike a structure or come within 5 feet of any conductor lower than 200-kV, or within 10 feet of any conductor 200-kV or higher, with the distance being determined at maximum design sag"; or

> (2)     defining "immediate hazard" to mean a tree that meets that criteria [Doc. 405 p. 2].

While maintaining that the "immediate hazard" standard is appropriate, plaintiffs propose a third standard in response to defendant's proposal.  They submit that the Court

should take into account the North American Electric Reliability Corporation's ("NERC") reliability standard known as FAC-003-3 [*See* Doc. 411-1]. This standard requires defendant, and other companies transmitting high-voltage electricity, to maintain minimum vegetation clearance distances on their high-voltage lines. The required clearance distances vary with elevation and voltage. Plaintiffs point out that at the typical elevation for Knoxville, the minimum clearance for 500kV is 5.25 feet and for 161kV, it is 2.09 feet.

In determining which standard to apply, the Court will first discuss the specificity requirements applicable to injunction orders. The Court will then discuss the following standards in turn: (1) defendant's proposed standard; (2) plaintiffs' proposed NERC standard; and (3) plaintiffs' proposed "immediate hazard" standard.

### 1.    Specificity Requirements for Injunctions

Federal Rule of Civil Procedure 65(d) requires that an injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)–(C). Such specificity is required to "prevent uncertainty and confusion on the part of those faced with injunctive orders ." *Schmidt v. Lessard,* 414 U.S. 473, 476 (1974). In explaining the fundamental policies underlying Rule 65(d), the Supreme Court has provided that "judicial contempt power is a potent weapon," and "[w]hen it is founded upon a decree too vague to be understood, it can be a deadly one." *Int'l Longshoremen's Ass'n, Local 1921 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967).

While courts must state injunction terms specifically, it is not necessary for courts to "identify every conceivable act that would be covered by an injunction." *Delphi Auto. PLC v. Absmeier*, No. 15-CV-13966, 2016 WL 1156741, at \*5 (E.D. Mich. Mar. 24, 2016). Rather, "the fair notice requirement of Rule 65(d) must be applied 'in the light of the circumstances surrounding (the injunction's) entry: the relief sought by the moving party, the evidence produced at the hearing on the injunction, and the mischief that the injunction seeks to prevent." *Common Cause v. Nuclear Regulatory Comm'n*, 674 F.2d 921, 927 (D.C. Cir. 1982) (quoting *United States v. Christie Indus., Inc.*, 465 F.2d 1000, 1007 (3d Cir. 1972)). Courts are "entitled to expect that [an] injunction would be interpreted with a modicum of common sense." *United States v. ITS Fin., LLC*, 592 F. App'x 387, 398 (6th Cir. 2014). Furthermore, "[t]he language of the injunction need only be as specific as possible in light of the commercial environment in which it arises, such that a reasonable person could understand what conduct is proscribed." *Delphi Auto. PLC*, 2016 WL 1156741, at \*5 (citing *Medtronic, Inc. v. Benda*, 689 F.2d 645, 649 (7th Cir. 1982)).

### 2. Defendant's Proposed Standard

In opposition to plaintiffs' proposed "immediate hazard" standard, defendant proposes a new standard, which would permit it to remove any tree that is within 20 feet of a conductor. Defendant asserts that the purpose of this standard is to identify with reasonable specificity those trees that may be removed during the injunctive period. Defendant provides that it created this standard after considering which trees pose a hazard to safety and reliability in light of defendant's multi-year vegetation management schedule.

Defendant contends that this standard, coupled with its projected budget, sufficiently circumscribes the number of trees it will cut during the injunctive period.

While defendant's proposed definition provides specific standards, the fair notice condition of Rule 56(d) requires consideration of the injunctive relief plaintiffs seek. *See Common Cause*, 674 F.2d at 927. Plaintiffs seek to enjoin defendant from engaging in vegetation management practices that are contrary to its practices prior to the implementation of the 15-foot rule. Plaintiffs assert that defendant's proposed standard is inadequate because it is not in line with defendant's prior practices. Indeed, defendant has not represented to the Court that this new proposed standard encompasses its prior practices. Rather, this appears to be an entirely new standard that defendant seeks to implement. Although defendant's proposed approach would result in defendant removing fewer trees than under the 15-foot rule, the proposal is still a new policy and plaintiffs seek to enjoin defendant from engaging in activity that is not in line with its practices prior to the implementation of the 15-foot rule.

The Court notes that in determining the proper level of specificity for an injunction, it also considers "the mischief that the injunction seeks to prevent." *See id.* Defendant has confessed that its implementation of the 15-foot rule violated NEPA because defendant failed to publish an EIS prior to the rule's implementation. Plaintiffs have indicated that they believe that this proposed practice is, like the 15-foot rule, a new federal action with significant environmental impact that would require an EIS before implementation. Although the Court has not determined that this is the case, it would be inappropriate for

the Court to allow defendant to implement this new policy absent a valid determination that no EIS is necessary or that defendant has published an adequate EIS. Including defendant's proposed standard in the injunction would thus risk sanctioning the exact type of "mischief" the injunction should seek to prevent. *See id.*

In light of these considerations, the Court agrees with plaintiffs that defendant's proposed vegetation management standard is not appropriate.

### 3. Plaintiffs' Proposed NERC Standard

The Court now turns to plaintiffs' proposed NERC standard. If the Court is inclined to consider a foot-measured basis for determining "immediate hazard," plaintiffs propose that it should consider NERC's reliability standard known as FAC-003-3 [*See* Doc. 411-1]. In response to this request, defendant notes that the NERC standards plaintiffs rely on are out of date and the minimum clearance standards have since increased [*See* Doc. 415-1]. Defendant also asserts that crafting an appropriate standard for the injunction requires consideration of factors other than the minimum vegetation clearance distances, such as the length of defendant's maintenance cycles, growth rates of certain trees, and safe working distances [Doc. 394 p. 2].

The Court agrees with defendant that the NERC minimum vegetation clearance distances do not provide a workable standard, as they do not take into account several factors defendant must consider in its vegetation management. As defendant notes, the NERC minimum standards plaintiffs rely on expressly recognize that "prudent vegetation management practices dictate substantially greater distances" than NERC requires [Doc.

411-1 p. 26 n.16 ("The distances in this Table are the minimums required to prevent Flash-over; however prudent vegetation maintenance practices dictate that substantially greater distances will be achieved at time of vegetation maintenance.")]. In light of this, the Court finds that plaintiffs' proposed NERC standard inappropriate.

### 4. Plaintiffs' Proposed "Immediate Hazard" Standard

The final proposed standard is plaintiffs' "immediate hazard" standard. Plaintiffs submit that this proposed standard is in line with defendant's prior practices because it gives defendant "complete discretion" to " trim or remove any trees in the right-of-way, whether wire zone or buffer zone, or danger trees outside the right-of-way if [defendant] deems any such tree to present an immediate hazard to the transmission lines" [Doc. 404-1 p. 13]. Defendant argues, however, that "immediate hazard" does not provide a sufficiently defined standard that would allow the Court and the parties to ascertain the exact conduct proscribed by the injunction.

The Court recognizes that there is some ambiguity in the phrase "immediate hazard," but the Court also notes that defendant has extensive experience with vegetation management and should know what conduct is proscribed by this standard. *See Delphi Auto. PLC*, 2016 WL 1156741, at *5 (considering that an injunction's language "need only be as specific as possible in light of the . . . environment in which it arises"). Before defendant implemented the 15-foot rule, it had the same discretion in vegetation management that plaintiffs' proposed standard now provides. As this standard encompasses defendant's prior practices, a "reasonable person" in vegetation management

16

"could understand what conduct is proscribed." *See id.*; *see also Mayfield Eng'g, Inc. v. Ohio Tpk. Comm'n*, No. 97-4474, 1999 WL 196562, at *3 (6th Cir. Mar. 31, 1999) (finding that Rule 65(d) did not require the court to specifically identify trade secrets in an injunction where the parties understood the meaning).

Furthermore, as previously discussed, creating a new, more specific standard may result in implementing a practice in violation of NEPA. Plaintiffs and defendant both appear to recognize the value in determining the proper standard for this injunction expeditiously [*See* Doc. 394 p. 10; Doc. 401-1 pp. 12, 14]. Furthermore, the parties assert that the Court should establish a standard on the present record rather than requiring the parties to expressly define defendant's prior practices through further discovery [*See* Doc. 394 p. 10; Doc. 401-1 pp. 12, 14]. The Court also notes that at the June 26, 2017, hearing in this matter, the Court provided the parties with another opportunity to come to an agreement on an appropriate vegetation management practice. The parties informed the Court via a Joint Status Report that they could not reach an agreement on the matter [Doc. 422].

As the Court has already recognized, there is some ambiguity in the term "immediate hazard." However, given that the parties agree discovery is not warranted, and after considering that imposing a new standard could run afoul of NEPA, the Court finds it fitting to adopt plaintiffs' proposed "immediate hazard" standard. This standard is appropriate after considering Rule 65(d) in the light of the circumstances surrounding the injunctions entry, including the relief plaintiffs seek, the record before the Court, and "the

mischief that the injunction seeks to prevent." *See Common Cause*, 674 F.2d at 927; *see also ITS Fin., LLC*, 592 F. App'x at 398 (providing that courts are "entitled to expect that [an] injunction would be interpreted with a modicum of common sense").

Should the parties have concerns in the future as to the meaning of "immediate hazard," the Court notes that it will include a provision in the injunction retaining jurisdiction "to clarify the injunction should the need arise." *ITS Fin., LLC*, 592 F. App'x at 398 (finding that although an injunction had "some ambiguity," the district court's decision to retain jurisdiction lessened the impact of the lack of specificity). In addition, if a party seeks to modify any provision of the injunction, the Court will require that the parties first meet and confer, in order to attempt to reach agreement before applying to the Court.

In sum, the Court will include plaintiffs' proposed "immediate hazard" standard in the injunction. The Court now turns to the question of whether to include a spending-reporting requirement in the injunction.

### B.    Spending-Reporting Requirement

Defendant's final proposed order provides: "The Court accepts TVA's representation that it has budgeted $15 million for its yearly vegetation management, and $14 million for vegetation management during Fiscal Year 2018 through 2020." Defendant, however, objects to the inclusion of the following spending-reporting requirement in plaintiffs' second proposed order:

> TVA shall report its monthly and cumulative annual spending levels to the Plaintiffs when those figures are reasonably available through its accounting

> department. The Plaintiffs are granted leave of court to advise the Court if it believes that TVA's expenditures are exceeding these levels, and the Court will take appropriate action if it deems advisable [Doc. 404-2 p. 3].

Defendant argues that requiring it to allot its revenue in a particular manner violates separation-of-powers principles. It asserts that this Court has no authority to order defendant to reduce its budget and that defendant's board has the exclusive statutory authority to oversee implementation of the budget. Defendant also points out that NEPA is a procedural statute that does not have substantive requirements.

Plaintiffs provide that they proposed this language in order to keep defendant honest in what it tells the Court and what it actually does. They assert that defendant's argument regarding separation of powers is premature as, under the proposed language, this Court may or may not take action should defendant exceed its represented spending levels and, if the Court decides to take such action, that action may or may not be an order to reduce spending levels.

While not dispositive on the issue of whether defendant is complying with the injunction, the Court finds that spending levels are one indicator of whether they are in compliance. Although defendant points out that NEPA is a procedural statute that does not have substantive requirements, the injunction at issue does have substantive requirements, namely, that defendant must revert to its prior practices. Whether defendant is adhering to its represented budget would help to illustrate whether defendant has reverted to prior practices, and thus, whether defendant is adhering to the substantive requirements of the injunction.

Furthermore, the Court agrees with plaintiffs that defendant's separation-of-powers concern is premature. Including a provision in the injunction requiring defendant to report spending levels does not, as defendant argues, "presuppose judicial authority" to "order an agency to reduce its budget in conjunction with the enjoinment of a particular action" [Doc. 415 p. 6]. As the Court indicated at the hearing on this matter, the Court does not intend to restrict defendant in this manner. The Court notes that the injunction will not include a requirement that defendant stay within its represented budget for vegetation management. Rather, as the Court has already noted, spending levels are an indication as to whether defendant is violating the terms of the injunction.

Particularly in light of defendant's previous representations that it had abandoned the 15-foot rule, when there was evidence that the rule was still having an on-the-ground effect, the Court finds that including a spending-reporting requirement in the injunction is warranted. Rather than requiring defendant to report their spending levels on a monthly basis, however, the Court finds that reporting on a quarterly and annual basis is more appropriate. In addition, rather than granting plaintiffs leave to advise the Court if defendant is exceeding its represented budget, the Court finds that plaintiffs may use these spending reports as evidence of defendant's compliance with the injunction, and plaintiffs may file an appropriate motion if they believe defendant is not in compliance.

### C.     When the Injunction Should Dissolve

The final issue the parties disagree on is when the injunction should dissolve. Defendant submits that the injunction should dissolve once it notifies the Court that its final

EIS has been published. Plaintiffs, however, assert that that this proposal does not provide them with meaningful relief because "there is no mechanism for the Court to determine whether the anticipated EIS will be sufficient, that is, whether it adequately addresses the environmental effects of the proposed action" [Doc. 392 p. 19]. As such, plaintiffs include the following language in their second proposed order:

> IT IS FURTHER ORDERED that TVA is ENJOINED from further implementing the 15-foot rule until this Court determines that it has prepared and published an [EIS] that takes the requisite "hard look" at the environmental consequences of the proposed action, as required by NEPA.

> IT IS FURTHER ORDERED that the injunctions contained in this order will remain in effect until the Court determines that TVA has prepared and published an [EIS] that takes the requisite "hard look" at the environmental consequences of the proposed action, as required by NEPA, and has entered an order dissolving the injunctions [Doc. 404-2 pp. 1–2].

Defendant argues that plaintiffs' proposed language providing for this Court's maintenance of jurisdiction to review the sufficiency of the EIS would be improper. According to defendant, the harm plaintiffs seek to remedy in the current litigation is based on defendant's implementation of the 15-foot rule without performing an appropriate environmental review and the fact that this policy continues to have an impact. Defendant further asserts that any harm plaintiffs may allege they will suffer based on the proposed vegetation management alternative policy that defendant will eventually choose to implement is not tethered to the harm sought to be remedied by the injunction at issue here. Defendant points out that while it plans to include and study an alternative that has effects comparable to the 15-foot rule, this is not necessarily the alternative defendant will choose. Defendant contends that once it has notified the Court that the EIS is complete and a record

of decision has been issued, the injunction in this lawsuit should dissolve and any challenges plaintiffs have to the sufficiency of the EIS must be made in a separate lawsuit.

In response, plaintiffs argue that accepting defendant's proposal would result in unnecessary procedural hurdles, in that plaintiffs would have to file a separate lawsuit challenging the policy and there would be "yet another unnecessary court emergency, with another request for temporary injunction" [Doc. 410 p. 2]. While litigating this new case, plaintiffs assert that defendant would be "chopping away at the buffer zones and other trees in the right-of-way" [*Id.*]. Plaintiffs contend that given defendant's substantial history of disregarding its environmental obligations, it would be an "exceptionally bad idea" to require plaintiffs to file yet another request for an injunction [*Id.*]. Plaintiffs argue that in the interests of judicial economy, the Court should retain jurisdiction until it has determined whether defendant has taken the requisite "hard look" at the environmental consequences of its actions.

The Court notes that several courts have issued injunctions that require parties to institute separate proceedings to challenge the adequacy of environmental documents filed in response to the injunction. *See, e.g, Hunt v. N.C. Dep't of Transp.,* 299 F. Supp. 2d 529, 532 (E.D.N.C. 2004) (noting in a NEPA case that the court "entered an order dissolving the injunction, with the understanding that plaintiffs would be allowed to file a new suit and challenge the 'adequacy' of the [new] EIS"); *see also Minn. Pub. Interest Research Grp. v. Butz*, 498 F.2d 1314, 1325 n.32 (8th Cir. 1974) (concluding that injunction would "terminate upon the filing of the final EIS" and that a "challenge to the adequacy of the

final EIS will require institution of a separate proceeding"); *Morgan v. U.S. Postal Serv.*, 405 F. Supp. 413, 425 n.16 (W.D. Mo. 1975) ("The temporary injunction issued in this case will terminate when a final EIS is filed by the [Postal] Service. Challenges to the adequacy of the EIS must be made in a separate suit.").

Other courts, however, have expressed intention when issuing an injunction to retain jurisdiction to review whether the defendants have complied with necessary procedural requirements. *See, e.g., Sierra Club v. Penfold*, 857 F.2d 1307, 1322 (9th Cir. 1988) (holding that "the district court did not abuse its discretion in retaining jurisdiction to review the adequacy of the EIS"); *Sierra Club v. Callaway,* 499 F.2d 982, 994 (5th Cir. 1974) (ordering that the injunction "will continue in force pending the determination of the sufficiency of the respective [environmental] statements"); *Mont. Wilderness Ass'n*, 408 F. Supp. 2d at 1038–39 (providing that the defendants shall submit "a request for dissolution of the injunction" after "completion of the procedural steps necessary to comply with NEPA" and the "[p]laintiffs will have an opportunity to state their position with respect to dissolution of the injunction"); *Nat'l Audubon Soc'y v. Butler,* 160 F. Supp. 2d 1180, 1191 (W.D. Wash. 2001) (ordering that the court will "retain jurisdiction to dissolve the injunction upon a showing the defendants have prepared an adequate EIS"); *Pub. Serv. Co. of Colo. v. Andrus*, 825 F. Supp. 1483, 1510–11 (D. Idaho 1993) (noting that "court shall exercise its discretion and retain jurisdiction over this case for the purpose of hearing and resolving any dispute between Idaho and DOE regarding the adequacy of the final EIS").

As there is precedent supporting both positions regarding whether the Court should retain jurisdiction, the Court turns to the parties' additional arguments in support of their respective positions. Defendant contends that this Court should not retain jurisdiction to review the EIS because "[w]hether plaintiffs will suffer irreparable harm by implementation of the vegetation management practice [defendant] will ultimately choose as its preferred alternative following public comment and study is unestablished" [Doc. 394 p. 11]. Defendant argues, therefore, that any harm plaintiffs may suffer is "*contingent* harm not tied to the harm [p]laintiffs allege they suffered from the date they filed their [c]omplaint through today" [Doc. 394 p. 11].

Plaintiffs, however, contend that they have suffered harm from the management of vegetation on defendant's transmission system even after defendant purported to suspend the 15-foot rule. Should defendant choose an alternative action, that action may still be tied to the harm the Court seeks to remedy with this injunction. The Court is cognizant that plaintiffs would have to engage in procedural hurdles to challenge the new vegetation policy. The Court recognizes plaintiffs' argument that this could result in a circumstance in which defendant would be "chopping away at the buffer zones and other trees in the right-of-way," while plaintiffs file another lawsuit and this Court makes a determination on that action [Doc. 410 p. 2]. As such, the Court finds that plaintiffs' concerns have merit and the Court will retain jurisdiction over the injunction beyond defendant's representation that it has issued an EIS.

The Court recognizes, however, that defendant may implement a rule very different from the 15-foot rule.  Should that situation occur, it may constitute a "significant change in factual circumstances" that could warrant dissolving the injunction.  *See Sierra Club v. U.S. Dept. of Agric.*, No. 94-CV-4061, 2013 WL 811672, at *17–20 (N.D. Ill. Mar. 5, 2013) (finding that "a significant change in factual circumstances" warranted dissolving the injunction when the defendant "embarked on an entirely new forest planning process that was based on an entirely new environmental analysis and resulted in the selection of a different forest planning alternative").

Once defendant issues a final decision it believes complies with NEPA, the Court will require defendant to file a request for dissolution of the injunction.  At that point, plaintiffs will have the opportunity to state their position regarding whether the injunction should be dissolved.  *See Mont. Wilderness Ass'n*, 408 F. Supp. 2d at 1038–39 (providing that the defendants shall submit "a request for dissolution of the injunction" and the "[p]laintiffs will have an opportunity to state their position with respect to dissolution of the injunction").  The Court would then determine whether there is a change in circumstances that justifies dissolving the injunction without reviewing the EIS.

In adopting this approach, the Court finds that crafting an injunction allowing it to retain jurisdiction over reviewing the EIS would not cause any unwarranted harm to defendant.  Rather, it would help to ensure defendant's compliance with NEPA. Presumably, should the Court decide not to retain jurisdiction, and plaintiffs do not believe

the EIS is adequate, plaintiffs would file another lawsuit challenging the new policy and this Court would engage in the same analysis at it would have in retaining jurisdiction.

The Court finds that this approach appropriately balances the parties' concerns regarding the Court's retention of jurisdiction.

## IV. Motion for Sanctions, Motion for Discovery, and Motions to File FOIA Responses

Plaintiffs move the Court to issue sanctions against defendant because defendant allegedly: (1) falsely represented that it was suspending the 15-foot rule and reverting to its prior practices; and/or (2) disregarded those representations and continued with its new practices. Plaintiffs assert that the following sanctions are appropriate: (1) an award of a separate attorney's fee; and (2) an order precluding defendant's personnel involved in the alleged wrongdoing from participating in the environmental review of vegetation management policies. Plaintiffs also seek discovery[2] and seek leave to file a FOIA response in connection with their request for sanctions.

As to plaintiffs' request for an additional attorney's fee, the Equal Access to Justice Act ("EAJA") already provides an avenue for plaintiff to seek this fee. Specifically, 29 U.S.C. § 2412(b) permits a fee award to a prevailing party and states that "[t]he United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically

---

[2] The Court notes that plaintiffs initially also sought discovery to determine defendant's prior practices and in connection with its motion to amend. Plaintiffs, however, contend that discovery is not needed to determine prior practices and the Court will deny plaintiffs' motion to amend. As such, the requested discovery is only in connection to plaintiffs' sanctions motion.

provides for such an award." 29 U.S.C. § 2412(b). This "common-law exception" allows a litigant to seek attorney's fees at a market hourly rate if a court determines that the government "has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Prince v. Colvin*, 94 F. Supp. 3d 787, 796 (N.D. Tex. 2015) (internal quotation marks omitted). The Court notes that this is the same bad-faith determination required for the imposition of sanctions. Because an existing statute will provide plaintiffs with the same fees plaintiffs' seek as sanctions, the Court finds it appropriate for plaintiff to seek such fees in connection with its request for fees under the EAJA.

Plaintiffs also propose precluding defendant's personnel involved in the alleged wrongdoing from participating in the environmental review of vegetation management policies. In considering this sanction, the Court is cognizant that "impos[ing] sanctions on executive conduct that is otherwise permitted by the Constitution, a federal statute or a rule will most likely be invading the executive sphere rather than protecting itself from invasion." *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1985). The Court also notes that after defendant has rendered a final agency decision, plaintiffs may challenge the action if they believe it does not comply with NEPA. Consequently, the Court does not find it appropriate in this circumstance to restrict defendant's discretion to choose who participates in its policymaking.

As plaintiffs may seek fees pursuant to the EAJA, and because the Court will not impose limitations on which of defendant's employees participate in the environmental review, the Court will deny plaintiffs' Motion for Sanctions [Doc. 397] at the juncture.

Because plaintiffs' Motion for Discovery [Doc. 399], Motion for Approval to File FOIA Response re Woodward Instructions or Lack of Instructions [Doc. 408], and Motion for Approval to File FOIA Response Re TVA's Instructions to Suspend the 15-Foot Rule and/or Revert to Previous Practices [Doc. 424] all relate to plaintiffs' request for sanctions, the Court will also deny those motions at this time. Plaintiffs may refile such motions in the context of its request for attorney's fees under the EAJA.

## V.    Conclusion

For the reasons discussed herein, the Court will:

a. **GRANT in part and DENY in part** defendant's Motion for Judgment in Plaintiffs' Favor [Doc. 378], to the extent that the Court will enter judgment in plaintiffs favor and will issue an injunction, but will not accept all of defendant's terms in the injunction;

b. **DENY** plaintiffs' Motion for Sanctions and an Evidentiary Hearing [Doc. 397];

c. **DENY** plaintiffs' Motion for Discovery [Doc. 399];

d. **DENY** plaintiffs' Motion for Leave to File Fourth Amended Complaint and to Join Additional Plaintiff [Doc. 401];

e. **GRANT in part and DENY in part** defendant's Motion for Entry of Order or Hearing [Doc. 405], to the extent that the Court held a hearing in this matter and will issue an injunction order, but will not accept all of defendant's terms in the injunction;

f. **DENY** plaintiffs' Motion for Approval to File FOIA Response re Woodward Instructions or Lack of Instructions [Doc. 408];

g. **DENY** plaintiffs' Motion for Approval to File FOIA Response re TVA's Instructions to Suspend the 15-Foot Rule and/or Revert to Previous Practices [Doc. 424].

Pursuant to these rulings and based on defendant's Confession of Judgment [Doc. 377], the Court will **ADJUDGE** that defendant's implementation of the 15-foot rule violated NEPA and its implementing regulations because it was a major federal action significantly affecting the quality of the human environment and was not properly studied under NEPA prior to its implementation. The Court will enter a separate Injunction Order, and the Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE