UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| DONNA W. SHERWOOD, ET AL., | ) |
|---|---|
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No.: 3:12-CV-156-TAV-HBG |
| | ) |
| TENNESSEE VALLEY AUTHORITY, | ) |
| | ) |
| Defendant. | ) |

# AMENDED[1] MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant Tennessee Valley Authority's ("TVA") Motion to Dissolve Injunction [Doc. 458], and plaintiffs' Motion to Require TVA to Compile the Administrative Record for Its Decision to Implement Alternative C and/or For Discovery [Doc. 464]. These motions have been fully briefed [Docs. 459, 463, 465, 468, 469], and the matter is now ripe for the Court's review. For the reasons stated below, the Court will **GRANT** TVA's motion to dissolve the injunction [Doc. 458] and **DENY AS MOOT** plaintiff's motion for the administrative record or discovery [Doc. 464].

---

[1] This Amended Memorandum Opinion and Order is substantively identical to the Memorandum Opinion and Order [Doc. 473] entered November 25, 2020, except the following changes: (1) the Court amended the quotation on page 13 from *City of Tenakee v. Block*, 778 F.2d 1402 (9th Cir. 1985) and added a citation to *Kelley v. Selin*, 42 F.3d 1501 (6th Cir. 1995) to better reflect the facts of this case and the state of Sixth Circuit law; (2) the Court changed the term "site-specific EIS" to "site specific review(s)" throughout page 14; (3) the Court amended the quotation on pages 17 to 18 from *Sierra Club v. U.S. Dep't of Agric.*, No. 94-CV-4061, 2013 WL 811672 (S.D. Ill. Mar. 5, 2013), and a following statement on page 18, to better reflect the applicable administrative and judicial review processes applicable to this case; and (4) a typographical error on page 14 referring to the "implantation" rather than "implementation" of Alternative C.

## I. BACKGROUND

The Court presumes familiarity with this action based on the Court's previous opinions and orders, as well as the Sixth Circuit's opinions. Nevertheless, the Court will provide a brief background of the litigation in this case. This litigation started in 2012, when plaintiffs sued defendant for violating the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370m-12. Plaintiffs alleged that defendant violated NEPA by not preparing and publishing an environmental impact statement ("EIS") prior to implementing a new policy, referred to in this litigation as the "15-foot rule."[2] *See Sherwood v. Tenn. Valley Auth.*, 842 F.3d 400, 402 (6th Cir. 2016). After several rounds of litigation in this Court and in the Court of Appeals for the Sixth Circuit, this matter came back before this Court on remand from the Sixth Circuit [Doc. 356].

While this matter was on remand, after the first appeal, defendant moved to dismiss the case as moot [Doc. 232], asserting that it had suspended use of the 15-foot rule and reverted to the right-of-way maintenance practices that were utilized prior to the introduction of the 15-foot rule [Doc. 276, p. 2]. The Court granted defendant's motion and dismissed the case as moot [Docs. 276, 277], and plaintiffs appealed that decision to the Sixth Circuit [Doc. 286].

On that second appeal, the Sixth Circuit provided that even if defendant had formally abandoned the 15-foot rule, "evidence in the record suggests that [defendant] has

---

[2] According to the third amended complaint, the 15-foot rule involved TVA cutting, clearing, and/or removing any and all trees on its easement/rights of way that are 15 feet tall or taller, or might grow to be more than 15 feet tall [Doc. 170, p. 8].

not reverted back to the right-of-way practices it used before adopting the rule" [Doc. 356, p. 8]. The Sixth Circuit determined that some evidence in the record suggested that the 15-foot rule has some continuing effect and, therefore, that the case was not moot [*Id.* at 8–9]. The Sixth Circuit found that defendant's "promise to perform NEPA review before changing its buffer-zone maintenance policies is not an adequate assurance that its challenged conduct will not recur" [*Id.* at 10]. The Sixth Circuit further determined that "the record shows more than a 'mere possibility' that defendant's challenged conduct will recur (or is continuing)" [*Id.*]. The Sixth Circuit then remanded the case, providing that this Court should require defendant to compile an administrative record of its decision to implement the 15-foot rule [*Id.* at 11].

On second remand, defendant ultimately filed a Confession of Judgment in Plaintiffs' Favor [Doc. 377]. In that confession of judgment, defendant consented to entry of a judgment declaring that its implementation of the 15-foot rule violated NEPA [Doc. 377, p. 1]. Defendant also informed the Court that it had published notice in the Federal Register that it was preparing a programmatic, system-wide EIS of its transmission line right-of-way vegetation maintenance practices [*Id.*].

Based on defendant's confession of judgment, this Court found that TVA's implementation of the 15-foot rule violated NEPA, as well as its implementing regulations, because it was a major federal action significantly affecting the quality of the human environment and was not properly studied under NEPA prior to its implementation [Doc. 425, p. 10]. At that time, the parties disputed various provisions of the proposed

3

injunction, including provisions for when the injunction would dissolve. As to that issue, the parties raised similar arguments to those before the Court today, namely, whether the injunction should dissolve upon TVA's completion of an EIS under NEPA, or whether the Court should retain jurisdiction to review the EIS for NEPA compliance [*Id.* at 20–22]. The Court noted that there was precedent to support both positions [*Id.* at 22–23].

Ultimately, the Court recognized that plaintiffs would face procedural hurdles to challenging the new policy, and further environmental harm could occur while plaintiffs filed a new lawsuit [*Id.* at 24]. The Court found that these concerns had merit and held that it would retain jurisdiction over the injunction beyond defendant's representation that it had issued an EIS [*Id.*]. The Court also recognized, however, that TVA could implement a rule "very different" from the 15-foot rule, and, if that occurred, it may constitute a "significant change in factual circumstances" that could warrant dissolving the injunction [*Id.* at 25 (citing *Sierra Club v. U.S. Dep't of Agric.*, No. 94-CV-4061, 2013 WL 811672, at *17–20 (S.D. Ill. Mar. 5, 2013))].

The Court instructed that: "[o]nce defendant issues a final decision it believes complies with NEPA, the Court will require defendant to file a request for dissolution of the injunction. At that point, plaintiffs will have the opportunity to state their position regarding whether the motion should be dissolved" [*Id.*]. The Court continued to state that it "would then determine whether there is a change in circumstances that justifies dissolving the injunction without reviewing the EIS" [*Id.*]. The Court concluded that this approach would ensure defendant's compliance with NEPA [*Id.*].

4

Defendant now seeks to dissolve the injunction, on the ground that it has complied with NEPA by preparing a programmatic EIS ("PEIS")[3] [Doc. 458]. Plaintiffs oppose defendant's motion to dissolve the injunction [Doc. 463], and instead, move to require TVA to compile the administrative record for its EIS procedure [Doc. 464].

## II. STANDARD OF REVIEW

The modification and dissolution of injunctions is governed by Federal Rule of Civil Procedure 60(b)(5). *Deja Vu of Nashville, Inc. v. Metro. Gov. of Nashville & Davidson Cnty.*, 466 F.3d 391, 395 (6th Cir. 2006). In relevant part, Rule 60(b)(5) states that "the court may relieve a party . . . from a final judgment, order, or proceeding [if] . . . the judgment has been satisfied, release, or discharged . . . or it is no longer equitable that the judgment should have prospective application." Fed. R. Civ. P. 60(b)(5). The party seeking to dissolve an injunction bears the burden of establishing that a change in circumstances, either in fact or law, warrants revisiting or modifying the injunction. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992).

"[A] sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *Id*. at 388. "Ongoing injunctions should be dissolved when they no longer meet the requirements of equity." *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

---

[3] A copy of TVA's PEIS can be located on TVA's website at https://www.tva.com/Environment/Environmental-Stewardship/Environmental-Reviews/Transmission-System-Vegetation-Management-Program.

## III. ANALYSIS

### A. Defendant's Position

Defendant contends that it issued its Final PEIS in August 2019, and, after the statutory comment period, issued the Record of Decision on October 18, 2019 [Doc. 459, p. 3]. Defendant contends that its PEIS regarding its transmission line vegetation management practices complies with NEPA [*Id*.]. Defendant states that it considered, but eliminated, an alternative that encompassed the type of clearing that existed under the 15-foot rule [*Id*.]. Instead, defendant opted for "Alternative C: Condition-Based Control Strategy – End-State Meadow-like, Except for Areas Actively Maintained by Others (Compatible Trees Allowed)" [*Id*. at 4].

Defendant argues that, because it has not implemented the 15-foot rule, and has complied with the procedural requirements of NEPA, the Court's injunction should be dissolved [*Id*.]. Defendant notes that it made diligent efforts to involve the public at every step of the PEIS's development, including providing extensive opportunity for public comment [*Id*. at 4–5].

Defendant also contends that the PEIS fulfilled NEPA's procedural requirements [*Id*. at 5–12]. Defendant notes that, while NEPA sets forth broad environmental goals, its mandate is essentially procedural [*Id*. at 6]. Defendant contends that NEPA allows agencies to analyze actions programmatically and generically, and subsequent site-specific reviews can then "tier" from a programmatic EIS and incorporate by reference the general discussions in the programmatic documents so as to focus on the issues specific to the site

6

and the action being analyzed in the subsequent review [*Id*. at 6–7 (citing 40 C.F.R. §§ 1502.4(c)(2), 1508.28]. Defendant states that, because its vegetation management study was a programmatic one, it studied management methods and their environmental impacts across TVA's entire transmission system and will permit subsequent reviews of the management of individual transmission line segments in site-specific reviews [*Id*. at 8].

Defendant states that, pursuant to 40 C.F.R. § 1502.14(a), it considered, but eliminated from detailed analysis, three management alternatives because they were not practicable or would not achieve TVA's goals for the proposed action, including (1) the use of one type of control method across the entire system; (2) allowing landowners to maintain trees on parcels where the landowner primarily maintains the floor; and (3) the elimination of all trees on lands maintained by others regardless of those trees' compatibility with the transmission system, which was the 15-foot rule [*Id*. at 9]. As to the third alternative, the 15-foot rule, defendant states that it rejected this alternative because it would not only remove incompatible trees and shrubs, but would also remove compatible ones, and such compatible trees or shrubs "may be of particular value or importance to the landowners" [*Id*. at 10].

According to defendant, the PEIS then described four management alternatives retained for analysis [*Id*.]. Alternative A—the no action alternative, represented the status quo and was, thus, the management methods ordered by the Court's injunction. Because vegetation has grown up considerably in the two years since the injunction, the other three alternatives all included an initial step where non-compatible woody vegetation within the

7

buffer areas was removed, but grasses, forbs, and some small shrubs remain. Thereafter, the right-of-way would be maintained to a low height on a recurring cycle under Alternative B, and to a meadow-like end-state under Alternative C. Under Alternative D, the buffer zone would be managed to an end-state consisting of compatible vegetation that is variable by zone [*Id.*]. Pursuant to 40 C.F.R. § 1502.14(b), each alternative was considered in depth and compared against the others for various attributes [*Id.* at 10–11].

The PEIS then goes on to provide an in-depth environmental analysis of these alternatives [*Id.* at 11]. TVA ultimately identified its preferred alternative as Alternative C: Condition-Based Control Strategy – End-State Meadow-like, Except for Areas Actively Maintained by Others (Compatible Trees Allowed) [*Id.*]. Under Alternative C, initially, incompatible vegetation, including trees and woody vegetation that grew up during the period of the injunction would be removed across the full width of the existing right-of-way easement [*Id.*]. Thereafter, routine maintenance would entail identifying and removing vegetation that is incompatible with the meadow-like end state on an established cycle [*Id.* at 11–12]. TVA states that it would increase its coordination and interaction with landowners to identify compatible vegetation [*Id.* at 12]. TVA specifically noted that the impacts to most natural resources under Alternative C are temporary and short term [*Id.*]. It also addressed cumulative impacts of each alternative, as required under NEPA [*Id.*].

### B. Plaintiffs' Position

Plaintiffs argue that Alternative C is the functional equivalent of the 15-foot rule [Doc. 463, p. 1]. Specifically, plaintiffs contend that, because essentially all trees may

8

Case 3:12-cv-00156-TAV-HBG   Document 479   Filed 07/30/21   Page 8 of 18   PageID #: 29184

eventually reach fifteen (15) feet, the 15-foot rule amounted to the removal of virtually all of the trees in the right-of-way, and, again, with Alternative C, virtually all of the trees are to be removed [*Id.* at 2]. Plaintiffs also argue that the wording of the PEIS gives the impression that TVA might allow "compatible trees" in the right-of way, but the PEIS contains an Appendix of "compatible species of trees and shrubs," which is a list of bushes and shrubs only [*Id.* at 3–6].

Plaintiffs next argue that, by selecting Alternative C, TVA is seeking to reach a pre-determined result [*Id.* at 6]. Plaintiffs contend that TVA's decision comes after it has made an irreversible and irretrievable commitment of resources, the extent of which is unknown to plaintiffs, for which reason plaintiffs are filing a separate motion to require TVA to submit the administrative record or allow for discovery [*Id.* at 8]. Regardless, plaintiffs contend that it is clear that TVA did not engage in the NEPA process at the earliest possible time, and the decision was made after the "wheels had been rolling" for many years, and a substantial sum had been spent on the project [*Id.* at 9]. Plaintiffs contend that, due to this delay, it is highly likely that the PEIS was slanted in favor of finding that the 15-foot rule, now called Alternative C, would not significantly affect the environment [*Id.*].

Plaintiffs also point to several conclusions in the PEIS, which they contend are clearly erroneous, and indicate that TVA has not taken the required "hard look" at the environmental impact of Alternative C. Specifically, plaintiffs point to: (1) TVA's claim of "improved habitat value" as a result of clear-cutting; (2) TVA's conclusion that removal

9

of all trees in the right-of-way would be "notable, but not destabilizing"; and (3) TVA's claim that Alternative C will make the electric system safer and more reliable [*Id*. at 10–14, 20–22]. Plaintiffs also identify several alleged flaws in TVA's PEIS procedure that they contend indicate that TVA has not taken a "hard look" at the environmental impact of Alternative C, including: (1) failure to estimate the amount of herbicide to be used and what happens to it; (2) failure to consider the environmental consequences to wildlife or the Federal Migratory Bird Treaty Act; (3) failure to provide adequate justification for prohibiting landowners from trimming their own trees; (4) failure to address the environmental consequences of cutting down trees in landowner's yards; (5) failure to address costs of restoration, remediation, or reseeding; (6) failure to accurately and correctly describe the right-of-way; (7) failure to discuss previous policy; and (8) failure to acknowledge that the transmission lines are already safe and reliable [*Id*. at 19–20, 22–29].

Plaintiffs conclude by contesting TVA's effort to label the EIS as "programmatic," which plaintiffs contend, is an effort to avoid scrutiny by intentional vagueness [*Id*. at 30]. Although TVA contends that the site-specific impacts need not be evaluated until a critical decision has been made to act on site development, plaintiffs argue that the "critical decision" to clear-cut the entire right-of-way and repeatedly apply herbicide has already been made [*Id*.]. Plaintiffs also question TVA's institutional credibility, which it contends should bear on whether the statements and claims made in the PEIS are accepted as true and credible [*Id*. at 32].

10

### C. Discussion

#### 1. Satisfaction of the Injunction

In determining whether to dissolve the injunction, the Court first looks to whether the terms of the injunction have been satisfied, under the first clause of Rule 60(b)(5). *Sierra Club v. U.S. Dep't of Agric.*, No. 94-cv-4061-JPG, 2013 WL 811672, at *5 (S.D. Ill. Mar. 5, 2013). In that regard, the parties' arguments can ultimately be boiled down to whether the PEIS that TVA produced in an attempt to comply with NEPA actually complies with NEPA's requirement that the agency take a "hard look"[4] at the agency action and alternatives.

In their third amended complaint, plaintiffs asserted that TVA implemented the 15-foot rule without preparing and publishing an EIS prior to implementing the new policy, as required by NEPA [Doc. 170, pp. 6–8]. Plaintiffs listed various issues that they believed an EIS should have addressed before the implementation of the 15-foot rule [*Id.* at 59–60]. Plaintiffs asked the Court to declare that TVA had violated NEPA by implementing a new policy without preparing an EIS and enjoin TVA from further implementing the policy until it prepared and published an EIS in compliance with NEPA [*Id.* at 64].

---

[4] NEPA requires federal agencies to take a "hard look" at the environmental consequences of their projects before taking action. *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 374 (1989); 42 U.S.C. § 4332(2)(C). NEPA also "requires an agency to '[r]igorously explore and objectively evaluate all reasonable alternatives." *Tennessee Env. Council v. Tenn. Valley Auth.*, 32 F. Supp. 3d 876, 887 (E.D. Tenn. 2014) (quoting Section 1502.14(a)). "A court will . . . 'uphold [an agency's] discussion of alternatives as long as the alternatives are reasonable and the agency discusses them in reasonable detail'" *Id.* at 888 (quoting *Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190, 195 (D.C. Cir. 1991)).

11

TVA ultimately entered a confession of judgment, in which it consented to a judgment declaring that implementation of the 15-foot rule violated NEPA because it was a major federal action that significantly affected the quality of the human environment, and was not properly studied under NEPA prior to its implementation [Doc. 377, p. 1]. TVA thus consented to a judgment enjoining it from further implementing the 15-foot rule "until it prepares and publishes, pursuant to NEPA, an EIS or otherwise complies with NEPA" [*Id.* at 2].

The Court's memorandum opinion regarding the injunction found that, based on TVA's confession of judgment, TVA's "implementation of the 15-foot rule violated NEPA . . . because it was a major federal action significantly affecting the quality of the human environment and was not properly studied under NEPA prior to its implementation" [Doc. 425, p. 10]. The injunction order itself stated that "TVA is ENJOINED from further implementing the transmission line right-of-way vegetation management practice that has come to be known in this litigation as the '15-foot-rule' until TVA has prepared and published an environmental impact statement pursuant to the National Environmental Policy Act" [Doc. 427, p. 1]. The Court stated that "TVA shall submit a request for dissolution of the injunction after completion of the procedural steps necessary to comply with NEPA. Plaintiffs will then have the opportunity to state their position with respect to the dissolution of the injunction" [*Id.*].

TVA's confession of judgment, and the Court's subsequent injunction order, were clearly based on the fact that TVA had not prepared and published an EIS, as required by

12

NEPA, *at all*. Now that TVA has complied with that procedural requirement, and prepared the PEIS, plaintiffs oppose lifting the injunction on grounds that (1) a "programmatic" EIS does not comply with NEPA; and (2) the PEIS is insufficient in its analysis of numerous issues.

### a. Programmatic EIS

First, plaintiffs argue that TVA's labelling of its EIS as "programmatic" is "an effort to avoid scrutiny by intentional vagueness" [Doc. 463, p. 30]. Plaintiffs contend that TVA cannot wait to make site-specific impacts known, when it has already made the "critical decision" to clear-cut the entire right-of-way [*Id*.]. Plaintiffs also contend that, if the Court accepts TVA's definition of "programmatic," the injunction cannot be dissolved until TVA completes a site-specific plan for each segment of the right-of-way [*Id*. at 30–31].

Defendant, however, argues that programmatic reviews are entirely valid and are regularly utilized by federal agencies under NEPA [Doc. 468, p. 5]. Defendant also states that it is well aware that it must complete separate NEPA reviews for subsequent vegetation management of specific line segments [*Id*. at 7].

"Where there are large-scale plans for regional development, NEPA requires both a programmatic and a site-specific" review. *City of Tenakee Springs v. Block*, 778 F.2d 1402, 1407 (9th Cir. 1985) (citing 40 C.F.R. §§ 1508.28, 1502.20 (1983) and *Kleppe v. Sierra Club*, 427 U.S. 390, 409–14 (1976)); *see also Kelley v. Selin*, 42 F.3d 1501, 1518 (6th Cir. 1995) (indicating that whether an EIS or an environmental assessment ("EA") is required under NEPA depends on the circumstances). Such "programmatic" EIS process avoids

13

segmentation and may be "required when several proposals could have a 'cumulative or synergistic' impact within a region." *Oak Ridge Env. Peace All. v. Perry*, 412 F. Supp. 3d 786, 805 (E.D. Tenn. 2019) (citing *Kleppe*, 427 U.S. at 409). While the preparation of a PEIS will not relieve an agency from its duty to prepare later prepare a site-specific review, such later site-specific review may, through a process known as "tiering," incorporate by reference the general discussions contained in the PEIS. *Id*.

The Court does not find troublesome defendant's use of a programmatic EIS at this stage. Certainly, TVA's proposed vegetation management encompasses a large region, and the effects of implementing any policy for vegetation management will have varied environmental impacts in differing locations. In such an instance, it is clear that the use of a programmatic EIS, followed by site-specific reviews, is an acceptable course of action under NEPA.

The Court notes that TVA has acknowledged that site-specific reviews will be required before TVA can begin implementing Alternative C in compliance with NEPA [*See* Doc. 468, p. 7]. The Court, of course, expects TVA to abide by this representation it has made to the Court, and follow through with preparing and publishing site-specific reviews before it begins implementing Alternative C. However, the Court does not find it appropriate to judicially manage this process of implementation of Alternative C in various locations, as site-specific reviews are prepared. The Court's July 31, 2017 injunction order specifically contemplated that TVA would comply with that order by preparing a programmatic EIS, since this order was based on TVA's confession of judgment, which

14

specifically stated that TVA intended to proceed with a programmatic EIS process [*See* Doc. 377, p. 1 (stating that TVA had published notice in the Federal Register "that it is preparing a programmatic, system-wide Environmental Impact Statement")].[5] Accordingly, the Court finds that TVA's use of a programmatic EIS at this stage is appropriate, and is sufficient to satisfy the Court's July 31, 2017 injunction order.

### b. PEIS Insufficiencies

Second, plaintiffs argue that the PEIS is deficient in many ways, indicating that TVA failed to take a "hard look" at the policy alternatives, as required by NEPA [Doc. 463, pp. 10–29]. Despite plaintiffs' numerous complaints about the alleged insufficiencies of the PEIS's environmental analysis, the 328-page PEIS addresses many of the issues that plaintiffs insisted, in their third amended complaint, should be addressed in the forthcoming EIS, such as a discussion of soil erosion effects of the new practice or policy [Doc. 170, p. 59; PEIS § 4.5.2.2.2, p. 158], a discussion of the impact that the new practice or policy will have on wildlife [Doc. 170, p. 59; PEIS §§ 4.2, 4.3, pp. 104–42], consideration of state and federal laws relating to the protection of migratory birds [Doc. 170, p. 59; PEIS § 4.2.1.1, pp. 104–05], an estimate of the costs of a new policy or practice [Doc. 170, p. 60; PEIS Table S-2], discussion of TVA's responsibility to replant and remediate [Doc. 170, p. 60; PEIS § 2.3, pp. 43–44], and a discussion of the impact of herbicide use to surface waters [Doc. 170, p. 60; PEIS § 4.4.3.2.3, p. 151].

---

[5] The Court also notes that plaintiffs specifically addressed this paragraph of defendant's confession of judgment, but raised no complaints to TVA's plan to proceed with a programmatic EIS [Doc. 386, p. 1].

While the PEIS does not address *all* of the specific issues raised by plaintiffs, in the way that plaintiffs specifically requested in the third amended complaint, the Court is unaware of, and plaintiffs have not identified, any legal basis, within NEPA or its implementing regulations, that requires an agency to address every specific concern raised by opposing parties, in the course of preparing and publishing an EIS. The Court concludes that, while an agency is required to take a "hard look" at its proposed action, addressing each of these issues raised by plaintiffs is not necessary for TVA to take the required "hard look" at Alternative C. *See* 40 C.F.R. § 1502.2(a), (c) (stating that an EIS, prepared in compliance with NEPA, should "not be encyclopedic," but rather should "be analytic, concise, and no longer than necessary to comply with NEPA").

Ultimately, after confessing that it violated NEPA by implementing the 15-foot rule without preparing and publishing an EIS, TVA conducted an extensive review of the environmental impacts of various alternatives for maintaining the right-of-way areas, and prepared and published a PEIS containing a detailed analysis of its decision to implement a new alternative, rather than the initially complained-of "15-foot rule." In doing so, TVA has satisfied the terms of the Court's injunction order. Plaintiffs' attempts to challenge the sufficiency of TVA's PEIS simply raise new issues that have never been before this Court. Nothing in the Court's injunction order implicated that TVA was to address every issue raised by plaintiffs, but, rather, that TVA was to prepare and publish an EIS, as required by NEPA.

The Court pauses here to note that this is not a case where an agency has blatantly attempted to avoid addressing environmental issues in the EIS. To the contrary, based on the record before the Court, it appears that TVA has studied and addressed environmental issues raised by the various alternatives for maintaining the right-of-way areas, and ultimately published the 328-page PEIS that addresses numerous environmental issues, including many of those initially raised by plaintiffs in the third amended complaint. At least in light of TVA's effort to comply with the procedural requirements of NEPA, which was the purpose of the Court's injunction order, the Court finds that TVA has satisfied the terms of the injunction order such that lifting the injunction is now appropriate.

### 2. Equitability of Continued Enforcement of the Injunction

The Court now turns to whether, regardless of satisfaction of the injunction, it is no longer equitable to enforce the injunction, under the last clause of Rule 60(b)(5). *Sierra Club*, 2013 WL 811672, at *5. As an alternative ground for dissolving the injunction, the Court concludes that, even if TVA has not satisfied the injunction, it would no longer be equitable to enforce the injunction, because the new alternative selected by TVA, after preparation of the PEIS, was a significant change in factual circumstances. *See id*. at *17 (finding that an agency's adoption of a new plan was a significant change in factual circumstances). The new plan, Alternative C, "is subject to . . . a new judicial review under the APA. That [process] provides a far better avenue for a comprehensive determination of compliance with NEPA." *Id*. at *18. As the District Court for the Southern District of Illinois concluded in *Sierra Club*, the Court ultimately finds that "it is not appropriate to

17

make a judgment about the legality of [Alternative C]—a completely different plan than the [15-foot rule]—through the back door by labeling it as review of an injunction." *Id*.

The Court notes that, had TVA merely created planning documents to support its 15-foot rule, the Court might have come to a different conclusion. However, in light of the adoption of the new policy, Alternative C, it is advisable to complete any applicable administrative appeal processes, followed by a new, comprehensive judicial review. *See id.* at *19 (concluding that the scope of the new analysis and its variance from the prior, inadequate analysis, merited lifting an injunction and requiring a new administrative appeal). Accordingly, the Court finds that, even if TVA had not satisfied the terms of the Court's July 31, 2017 injunction order, it would nonetheless dissolve the injunction after TVA's preparation and publication of the PEIS, because continued enforcement of the injunction, after TVA has selected a new alternative, is no longer equitable.

## IV. CONCLUSION

For the reasons stated above, defendant's motion to dissolve the injunction [Doc. 458] is **GRANTED**. The Court's July 31, 2017 injunction order [Doc. 427] is **DISSOLVED**. Accordingly, Plaintiff's motion for the administrative record or discovery [Doc. 464] is **DENIED AS MOOT**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE