UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| DONNA W. SHERWOOD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:12-CV-156-TAV-DCP |
| | ) | |
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on plaintiffs' Motion to Supplement the Claimed Administrative Record and/or for Discovery [Doc. 523] and Motion to Strike, Exclude, or Remove Document from the Claimed Administrative Record [Doc. 529]. Defendant responded [Docs. 527, 530] and plaintiffs replied [Docs. 528, 531] to the respective motions. Accordingly, these matters are ripe for the Court's resolution. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, plaintiffs' Motion to Supplement the Claimed Administrative Record and/or for Discovery [Doc. 523] will be **PROVISIONALLY GRANTED** and their Motion to Strike, Exclude, or Remove Document from the Claimed Administrative Record [Doc. 529] will be **DENIED**.

I. **Background**

The Court presumes familiarity with this action based on the Court's previous opinions and orders, as well as the United States Court of Appeals for the Sixth Circuit's

opinions.[1] However, given the length and complexity of this litigation, the Court finds it appropriate to set forth some relevant background information.

Plaintiffs commenced this action on or about April 3, 2012, as a result of Defendant Tennessee Valley Authority's ("TVA") allegedly new vegetation management policy, which plaintiffs submitted required the removal of all trees, by cutting or using herbicide, that have a mature height of 15 feet or taller within its 15,900 mile transmission line right-of-way [Doc. 1].[2] TVA "maintains high voltage electric transmission lines to conduct electricity from sites where the electricity is generated to sites where the electricity is consumed, throughout a seven state region[,] including Tennessee[,]" Alabama, Mississippi, Kentucky, Georgia, North Carolina, and Virginia [Doc. 62 ¶¶ 6, 11].

Plaintiffs alleged that TVA had adopted a new policy, pursuant to which it would "cut, clear and/or remove any and all trees on its easement/rights of way that are 15 feet or tall or taller, or might grow to be more than 15 feet tall, throughout the seven state region that it serves" whether or not they "interfere with or pose a danger to the transmission lines" [*Id*. ¶¶ 11–12]. According to plaintiffs, this new policy would "effectively result in a clear-cut of all trees in the TVA rights-of-way, because there are very few naturally

---

[1] In particular, per the Sixth Circuit's most recent opinion in *Sherwood III*, "[t]he history of this litigation is fully described in *Sherwood I* and *Sherwood II*." *Sherwood v. Tenn. Valley Auth*., 46 F.4th 439, 440 (6th Cir. 2022) (*Sherwood III*) (first citing *Sherwood v. Tenn. Valley Auth*., 590 F. App'x 451, 453 (6th Cir. 2014) (*Sherwood I*); and then *Sherwood v. Tenn. Valley Auth*., 842 F.3d 400 (6th Cir. 2016) (*Sherwood II*)).

[2] Plaintiffs filed an amended complaint on May 2, 2012 [Doc. 8] and a second amended complaint on June 12, 2012 [Doc. 62]. Their third and fourth amendments are discussed *infra*.

occurring trees in the 7 state region that reach a mature height of no more than 15 feet" [*Id.* ¶ 32]. They submitted that TVA would cut down "millions of trees" pursuant to the new policy [*Id.* ¶ 36]. Plaintiffs alleged that this was in contrast to a policy in place since 1933, pursuant to which TVA allowed property owners to trim or prune their trees to maintain a safe distance between them and the transmission lines, and if the property owners did not do so, TVA would remove them [*Id.* ¶ 55].

Plaintiffs claimed that TVA's new policy would result in a number of environmental impacts, including herbicides that could cause birth defects ending up in the water [*Id.* ¶ 43], destruction of "hundreds of thousands, if not millions, of birds' nests" which would have an adverse effect upon migratory birds [*Id.* ¶¶ 44–50], "lead to a material increase in carbon dioxide ($CO_2$) in the atmosphere, doing damage to the environment," and damage the groundwater ecosystem because forests "provide natural filtration and storage systems that process nearly two-thirds of the water supply in the United States" [*Id.* ¶¶ 58–59].

In light of these allegations, plaintiffs brought four claims, designated as "counts": an injunction based upon common law (easements, trespass, conversion of property, and taking of property without compensation) ("Count I"); declaratory and injunctive relief based upon defendant's failure to make the environmental impact statement required by the National Environmental Policy Act ("NEPA") prior to implementing the new policy ("Count II"); declaratory and injunctive relief under the Administrative Procedure Act ("APA") for defendant's failure to engage in notice and comment rulemaking ("Count

3

III"); and declaratory and injunctive relief under the APA for arbitrary and capricious action ("Count IV") [*Id*. ¶¶ 94–125].

On February 19, 2013, this Court dismissed Counts I, III, and IV for failure to state a claim [Doc. 162]. Plaintiffs subsequently filed their Third Amended Complaint [Doc. 170], which contained only the NEPA Count (Count II) [*See* Doc. 182, p. 2]. In July of 2013, the Court found that TVA appeared to have taken the requisite "hard look" at potential environmental consequences of the project before implementing the 15-foot rule [Doc. 212, p. 28]. Accordingly, the Court granted summary judgment in favor of TVA on the NEPA claim [Docs. 212, 213].

Plaintiffs appealed [Doc. 214] and the Sixth Circuit reversed and remanded as to the NEPA claim only, finding that TVA did not file the correct administrative record [Doc. 228]. Specifically, the Sixth Circuit found that "the administrative record submitted by TVA did not consider the environmental consequences of the 15-foot rule" [*Id.* at 19]. The panel noted that the complaint alleged that TVA's alteration of its vegetation-maintenance practice constituted a major federal action under NEPA, and therefore, TVA must compile the administrative record for the challenged decision so that this Court could evaluate the decision's propriety under NEPA [*Id.*].

On remand, this Court ordered TVA to compile the administrative record for the challenged decision [Doc. 230]. TVA filed a motion to dismiss as moot, arguing that it had already complied with the Sixth Circuit's directive to suspend use of the 15-foot rule

4

[Doc. 232]. The Court granted TVA's motion to dismiss the NEPA claim as moot and denied other pending motions, including a motion for discovery [Docs. 276, 277].

Plaintiffs appealed again [Doc. 286], and the Sixth Circuit reversed and remanded anew [Doc. 356]. The appellate court held that "[b]ecause TVA has failed to prove that the fifteen-foot rule has no continuing effect, Sherwood's NEPA claim is not moot" [Doc. 38-2, p. 6]. "Even if TVA has formally abandoned the fifteen-foot policy," the court explained, "evidence in the record suggests that TVA has not reverted back to the right-of-way practices it used before adopting the rule" [*Id*.]. The Sixth Circuit instructed this Court to require TVA to compile an administrative record of the agency's decision to implement the fifteen-foot rule on remand [*Id*. at 9].

In compliance with the Sixth Circuit's holding, this Court ordered TVA to compile an administrative record on January 13, 2017 [Doc. 358], which TVA subsequently filed [Docs. 360–76]. However, after compiling this record, TVA filed a notice of confession of judgment in plaintiffs' favor [Doc. 377] and a motion for judgment in plaintiffs' favor [Docs. 378, 379], which precipitated a wave of additional filings [Docs. 392, 394, 400, 401, 402, 404-1, 407, 410, 413-1, 414–17]. The Court held a hearing to address these motions on June 26, 2017 [Doc. 421], ultimately entering an injunction order as to TVA [Doc. 427] and closing this case [Docs. 425, 426]. Specifically, the Court enjoined TVA from, *inter alia*, "further implementing the transmission line right-of-way vegetation management practice that has come to be known in this litigation as the '15-foot rule' until TVA has prepared and published an environmental impact statement pursuant to [NEPA],

5

42 U.S.C. §§ 4321–4370m12" [Doc. 427, p. 1]. TVA was ordered to "request [ ] dissolution of the injunction after completion of the procedural steps necessary to comply with NEPA" [*Id.*].

On October 18, 2019, TVA filed a motion to dissolve the injunction [Doc. 458], which catalyzed another tranche of briefing [Docs. 463, 464, 466, 468, 469]. The Court ultimately granted TVA's motion, dissolved the injunction, and denied a pending motion to permit additional discovery as moot [Doc. 479 (amended memorandum)].

For the third time in this litigation, plaintiffs appealed [Doc. 480]. The Sixth Circuit, as before, reversed and remanded in August 2022 [Doc. 484]. The court held that "[t]he fact that Alternative C and the 15-foot rule are arguably indistinguishable indicates that the district court abused its discretion when it dissolved the injunction without compiling the administrative record and conducting a hard-look review of whether the EIS complied with [NEPA]" [Doc. 484, p. 9]. On remand, the Sixth Circuit directed this Court to complete "[a] hard-look review [of] Alternative C before dissolving the injunction based on TVA's compliance with NEPA" [*Id.* at 10].

With all of this background in place, the Court arrives at the present posture of this dispute. On October 17, 2022, TVA moved to file the administrative record [Doc. 489]. Shortly thereafter, plaintiffs moved to reinstate the injunction against TVA [Doc. 493]. The Court reinstated the injunction and ordered TVA to file the administrative record [Doc. 512]. TVA filed this record via DVDs on August 29, 2023 [Doc. 516]. Plaintiffs' instant motions concern this administrative record [Docs. 523, 529]. Specifically, plaintiffs

6

contend that additional discovery and/or supplementation is required [Doc. 523], as well as the striking of a specific document from the administrative record [Doc. 529].

## II. Applicable Law

The APA requires courts to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Generally speaking, "courts confine their review to the administrative record, which includes all materials compiled by the agency[ ] that were before the agency at the time the decision was made." *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997) (internal quotation marks omitted) (quoting *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1077 (1997)). As the Sixth Circuit explained in *Sierra Club*, "[s]everal reasons justify supplementation of the administrative record, such as when an agency deliberately or negligently excludes certain documents, or when the court needs certain background information in order to determine whether the agency considered all of the relevant factors." *Id*. (internal quotation marks omitted) (citing *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1428 (6th Cir. 1991)). The United States Supreme Court has suggested that "there must be a strong showing of bad faith or improper behavior" before courts inquire into the adequacy or completeness of the existing administrative record. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

7

### III. Analysis

#### A. Motion to Supplement the Administrative Record

Plaintiffs move to supplement the administrative record and/or allow discovery as to (i) the extent to which defendant had already implemented the 15-foot rule when it selected Alternative C; and (ii) the overall question of whether TVA had predetermined the approval of Alternative C [Doc. 523]. In support, they cite case law wherein courts have permitted supplementation of the administrative record to ensure an agency has not acted in bad faith or predetermined an outcome in defiance of the "hard look" requirement [*Id*. at 2–4]. Then, plaintiffs recite at length the procedural history of this case that, in their view, demonstrates defendant's persistent deceptive behavior [*See id.* at 5–21]. Specifically, they emphasize defendant's continued implementation of the 15-foot rule despite its representations to this Court and the Sixth Circuit that it had stopped doing so [*Id*. at 7–10]. As for TVA's more recent position in this litigation, plaintiffs contend that Alternative C "is the functional equivalent of the 15-foot rule, a wolf in sheep's clothing," evidencing another instance in which defendant has sought to obfuscate the true nature of its activity [*Id*. at 19]. In light of defendant's repeated misrepresentations, plaintiffs argue that supplementation of the record is warranted because "there is enough smoke here to justify discovery in search of the fire" [*Id*. at 25].

Defendant opposes this request on several grounds [Doc. 527]. First, it argues that plaintiffs have waived their request for extra-record discovery because, unlike the request for supplementation, they did not sufficiently develop this argument in their opening brief

8

[*Id.* at 10–11].  Second, it contends that the factual issues plaintiffs intend to explore with supplementation and/or discovery go to issues that are moot at this phase of litigation [*Id.* at 11–15].  Specifically, defendant asserts that "pre-injunction facts relied upon by [p]laintiffs to now justify supplementation of TVA's [administrative record] are thus wholly irrelevant to the Court's review of whether, post-injunction, TVA took the requisite 'hard look' at the environmental consequences of its action" [*Id.* at 14].  Arguing in the alternative, even if plaintiffs' request goes to live issues before the Court, defendant contends that they have failed to satisfy the applicable burden to warrant supplementation [*Id.* at 15–18].

In reply, plaintiffs first reject defendant's claim that they failed to sufficiently develop their request for discovery [Doc. 528, p. 2].  They also contend that the question of discovery and supplementation is ripe at this stage of litigation, contrary to defendant's claim of inappropriate timing [*Id.* at 4].  Plaintiffs reiterate that the history of this case substantiates their suspicion of bad faith and argue that the information they now request is directly tied to this allegation [*Id.* at 9].  Finally, they argue that they have satisfied their burden to request supplementation insofar as they describe the desired information with reasonable specificity and justify their request based upon evidence of bad faith [*Id.* at 15].

As an initial matter, the Court does not find that plaintiffs waived their discovery request for lack of sufficient argumentation because this request is intertwined with their arguments for supplementation.  Considering the totality of the circumstances in this case, including its lengthy procedural history (*see supra* Section I), the Court finds that plaintiffs

9

have raised sufficient arguments to warrant additional discovery and/or supplementation of the administrative record on the narrow issues identified in their motion. *See Overton Park*, 401 U.S. at 420. Specifically, plaintiffs will be afforded the opportunity to explore certain factual questions they outline under the subheading "The Request for Supplementation" [*See* Doc. 523, pp. 21–25]. While defendant's argument is well-taken that plaintiffs' sought supplementation may surface "stale facts" that are now moot, if this additional discovery does not aid plaintiffs in showing "that TVA engaged in bad faith following this Court's entry of final judgment on their NEPA claim . . . by pointing to the PEIS itself" [Doc. 527, pp. 14–15], then TVA remains free to emphasize this predicted deficiency in subsequent briefing. Regardless of what this narrow, additional discovery yields, the Court will be able to render a definitive decision as to the remaining issue presented in this case upon review of a complete administrative record.

Therefore, plaintiffs' motion [Doc. 523] is hereby **PROVISIONALLY GRANTED**, subject to their filing of a discovery plan that contains (i) a proposed discovery schedule, the final deadline of which, absent further Order, is not to extend beyond **three months** from entry of this Memorandum Opinion and Order; and (ii) a detailed description of the information actually sought in discovery. Plaintiffs **SHALL FILE** this discovery plan **within 30 days** of entry of this Memorandum Opinion and Order, which the Court hereby **REFERS** to United States Magistrate Judge Debra C. Poplin for her consideration or report and recommendation, as appropriate. Failure to timely file such a compliant discovery plan containing sufficiently detailed requests, as determined by

10

Judge Poplin upon her consideration, will result in this provisional grant of plaintiffs' motion being revoked/ denied.

### B. Motion to Strike from the Administrative Record

Plaintiffs move to strike[3] one document from the administrative record: defendant's memorandum regarding its "Determination of NEPA Adequacy," dated November 10, 2022 (a copy of which is attached to plaintiffs' motion) [Docs. 529, 529-1]. They describe this document as "a post hoc rationalization for the decision to select Alternative C" [*Id*. at 5]. Specifically, they argue that this document was not considered by defendant at the time of its decision to select Alternative C and was instead prepared in response to this litigation [*Id*. at 5–7]. Plaintiffs then describe at length how, in their view, defendant drafted this document in direct reply to the Sixth Circuit's most recent ruling in this case [*Id*. at 7–11].

Defendant responds in opposition, noting that "this document was generated to record TVA's evaluation of the adequacy of the existing NEPA analysis of the environmental issues covered in the PEIS and is an official document that records TVA's ultimate determination as to whether supplementation of the PEIS currently before the

---

[3] Plaintiffs do not cite legal authority authorizing this motion [*See generally* Doc. 529]. The mostly out-of-circuit case law discussed in the "Law and Authority" section of their brief does not appear to illustrate district courts striking documents from administrative records. *See Rock Creek All. v. U.S. Forest Serv.*, 703 F. Supp. 2d 1152, 1181 (D. Mont. 2010) (discussing propriety of supplemental reports but not discussing striking any such reports from the record), *aff'd in part sub nom. Rock Creek All. v. U.S. Fish & Wildlife Serv.*, 663 F.3d 439 (9th Cir. 2011); *Idaho Sporting Cong. Inc. v. Alexander*, 222 F.3d 562, 567 (9th Cir. 2000) (discussing propriety of agency reporting procedures but not discussing striking any such reports from the record). Given that defendant does not challenge plaintiffs' authority to bring such a motion [*see generally* Doc. 530], the Court will proceed to evaluate the merits under the assumption that plaintiffs' move to strike pursuant to the general authority of courts to strike "redundant, immaterial, impertinent, or scandalous matter[s]," as contemplated, e.g., in the pleadings context at Fed. R. Civ. P. 12(f).

11

Court was required" [Doc. 530, p. 4]. It goes on to argue that the mere fact that plaintiffs disagree with the contents of this document is an insufficient reason to strike it from the administrative record [*Id.*].

In reply, plaintiffs argue that TVA failed to make a convincing case for this document's inclusion in the administrative record [Doc. 531]. They go on to challenge the propriety of defendant's production of this document, again alleging that it amounts to "another 'lawyer gyration' to evade compliance with NEPA" [*Id.* at 4]. By attacking the content of the document, itself, plaintiffs ultimately argue that it "is not a NEPA document and should not be included in the administrative record" [*Id.* at 7].

Having already noted the importance of reviewing a complete administrative record at this stage of litigation (*see supra* Section III(A)), permitting the requested removal of a document now would not only be counterintuitive to plaintiffs' request for additional discovery, but would also potentially interfere with the Court's ability to conduct a thorough review. Plaintiffs' arguments against the veracity, relevance, and/or propriety of the "Determination of NEPA Adequacy" document are more appropriately addressed during merits adjudication and do not constitute compelling reasons to strike the document from the administrative record prior to such consideration on the merits. Plaintiffs' apparent disagreement with the content of this document should be assessed in the context of the full administrative record.

In sum, plaintiffs' Motion to Strike, Exclude, or Remove Document from the Claimed Administrative Record [Doc. 529] is **DENIED**.

## IV. Conclusion

For the reasons stated above, plaintiffs' Motion to Supplement the Claimed Administrative Record and/or for Discovery [Doc. 523] is **PROVISIONALLY GRANTED** and their Motion to Strike, Exclude, or Remove Document from the Claimed Administrative Record [Doc. 529] is **DENIED**. Plaintiffs **SHALL** file **within 30 days** of entry of this Memorandum Opinion and Order: a discovery plan that contains (i) a proposed discovery schedule, the final deadline of which, absent further Order, is not to extend beyond **three months** from entry of this Memorandum Opinion and Order; and (ii) a detailed description of the information actually sought in discovery. The Court **REFERS** review of the discovery plan to United States Magistrate Judge Debra C. Poplin for her consideration or report and recommendation, as appropriate.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE